IN THE MATTER OF O.R.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF O.R.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF O.R.
2019 OK CIV APP 58
Case Number: 117750
Decided: 09/20/2019
Mandate Issued: 10/16/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 58, __ P.3d __

 


IN THE MATTER OF O.R., AN ALLEGED DEPRIVED CHILD:



PAULA WINFREY, Appellant,
v.
STATE OF OKLAHOMA, Appellee.




APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY

HONORABLE TERRELL CROSSON, TRIAL JUDGE



REVERSED and REMANDED



Jeffrey A. Price, PRICE & SEARS, P.C., Muskogee, Oklahoma, for Appellant,

Kali Strain, Assistant District Attorney, Claremore, Oklahoma, for Appellee, State of Oklahoma,

Becki A. Murphy, Megan D. Martin, MURPHY FRANCY, PLLC, Tulsa, Oklahoma, for Appellees, Foster Parents,

Kacie Cresswell, BAYSINGER, HENSON, REIMER & CRESSWELL, Owasso, Oklahoma, for Appellee, O.R.,Minor Child.




BRIAN JACK GOREE, CHIEF JUDGE:


¶1 Paula Winfrey is the paternal grandmother and former foster parent of O.R. The Department of Human Services removed O.R. from Winfrey's home when he was eight months old and she filed an objection requesting his return. The juvenile court denied her motion and she commenced this appeal. We interpret the applicable statute de novo and review the decision for an abuse of discretion.[1]

¶2 DHS is authorized to move a child in its custody from one foster placement to another when there is an emergency.[2] The court may return a child to the objecting foster parent's home if it finds the decision to remove him was arbitrary, inconsistent with the child's permanency plan or not in his best interests.[3] In this case, the trial court conducted an evidentiary hearing and denied Winfrey's motion on grounds it was filed too late. We hold (1) Winfrey's motion was not time-barred, (2) the decision to remove O.R. was not arbitrary, (3) the removal was not inconsistent with the permanency plan, and (4) the case must be reversed for a determination of O.R.'s best interests.

I.

The Objection was not Time-Barred

¶3 DHS must give a foster parent 5 days advance notice before removing a child from the foster placement, except in an emergency. 10A O.S. §1-4-805(A)(1)(a). If the foster parent objects, the objection must be filed within 5 days after receipt of the notice. §1-4-805(C)(2).

¶4 Law enforcement seized drugs on Winfrey's premises and DHS removed O.R. on July 25, 2018 without giving advance written notice. Winfrey filed an objection almost two months later, on September 20, 2018. The trial judge implicitly found that the removal was an emergency and apparently concluded that in such a case the foster parent is required to file an objection within 5 days of the date the child was actually removed. The statute, however, is silent as to when a foster parent must file an objection when a child is removed without notice.

¶5 The State argues that in an emergency situation the foster parents are given actual notice when the child is physically removed and therefore the same five-day period to object should apply - especially given the law's policy of expediency of permanency for deprived children. This is sound argument. Nevertheless, establishing time periods for requiring action such as filing an objection is a Legislative function. The court incorrectly held the motion was filed out of time under the statute.

II.

The Removal was not Arbitrary

¶6 The decision to remove O.R. from Winfrey's home was connected with police officers' discovery of eight pounds of methamphetamine on the premises. However, mitigating circumstances came to light after the child was removed and they support Winfrey's argument that O.R.'s safety was never in jeopardy. Winfrey concedes the police found drugs, but she proposes the court should have considered all of the circumstances and reached a different conclusion.

¶7 Ms. Winfrey leases a large five bedroom home. Her rental agreement includes an apartment above the garage and that is where someone else's drug stash was discovered. Although she has a key to the apartment she does not use it as living space and it is not accessible from inside her home.

¶8 Apparently, Ms. Winfrey's son put the drugs inside a safe within the apartment. Ms. Winfrey had no prior knowledge of the safe, the drugs, or her son's access to the apartment. The son, Dwayne Winfrey, is the biological father of O.R. and he was taken to jail. DHS removed O.R. and placed him with different foster parents.

¶9 Ms. Winfrey admits that an open investigation concerning the presence of drugs would be grounds for an emergency removal of a foster child. She contends, however, that §1-4-805 should be applied to take into account relevant information that was available but discovered after the emergency removal. According to Winfrey, if the facts later indicated there was no danger, then failing to return the child is an arbitrary decision.

¶10 An arbitrary decision is one that is made without consideration, without a determining principle, or in disregard of the facts. See Scott v. Oklahoma Secondary School Activities Association, 2013 OK 84, ¶34, 313 P.3d 891, 902. A court report filed by a Court Appointed Special Advocate indicates that CASA and DHS received a police report stating that Ms. Winfrey's home was raided and a large amount of drugs was found upstairs in a safe. The report states O.R. was removed from the home immediately and "the home of Ms. Winfrey remains under investigation . . ." A Change in Placement Notification for Judge was filed July 27, 2018 with the explanation that there is an "open investigation on relative foster home."

¶11 We conclude the decision to immediately remove O.R. was substantially related to the discovery of drugs on the foster parent's premises. The removal was not arbitrary -- it was based on the considered determination that O.R. could be at risk of harm if he were to remain in a home where drugs had been discovered.

¶12 We hold that the question of whether an emergency removal was an arbitrary decision for purposes of §1-4-805(C)(4) must be determined by the circumstances at the time of the removal and not those that might be discovered later. However, post-removal facts may be admissible at the statutory hearing if they are relevant to the best interests of the child.

III.

The Removal was not Inconsistent
with the Permanency Plan

¶13 An individualized service plan was prepared for O.R.'s mother, Karly Dorland, and it stated: "Should reunification occur, Ms. Dorland will be able to provide for her child's basic needs, which include but are not limited to food, clothing, and shelter." The permanency plan was "return to own home." Ms. Winfrey argues DHS's decision to remove O.R. was inconsistent with the permanency plan. We have found no record evidence that the permanency plan was ever anything other than reunification with the natural mother, Karly Dorland, until after she voluntarily relinquished her parental rights. We therefore reject that contention.

IV.

Best Interests of the Child

¶14 Ms. Winfrey proposes that a court should have freedom to decide that an emergency removal was at first reasonably based (i.e. not arbitrary) but later shown to be unwarranted. We agree that the Legislature did not intend to prevent the court from considering relevant facts discovered after the moment the child was physically removed due to an emergency.

¶15 "Best interests" is one of three alternative grounds referenced in §1-4-805(C)(4) for determining the propriety of a child's removal from a foster placement. With that in mind, the statute may be read as follows: "The court may order that the child . . . be returned to the home of the objecting foster parent . . . if the court finds that the placement decision of the Department . . . was . . . not in the best interests of the child." We are convinced the Legislature intended that a child's best interests is the overriding concern, and returning a child could be appropriate even where an emergency removal was not arbitrary at the time it was performed. In this case, the court conducted a trial of the evidence but did not definitively determine whether the removal was in O.R.'s best interests.

¶16 The judge denied the motion because he concluded it was filed too late, but also expressed doubt that the decision to move O.R. was arbitrary, inconsistent with the permanency plan, or contrary to the child's best interests. The court stated: "I think it's out of time based on the statute. That is my reading of it. I think if we did go farther with it, I'm not sure the Court could find that it was arbitrary and consistent [sic] with the permanency plan or not in the best interest of the child based on the testimony I've heard here today. But based on the notice issue, the motion and the objection is overruled." Although the trial judge considered all of the evidence on the merits of the controversy, the court did not decide whether or not the removal was in the child's best interests. We remand the case for that determination.

V.

Conclusion

¶17 DHS possesses authority to protect threatened children by immediately removing them from a dangerous environment. The decision to do so must not be arbitrary, inconsistent with the permanency plan, or contrary to the best interests of the child. The question of whether an emergency removal was an arbitrary decision for purposes of §1-4-805(C)(4) must be determined by the circumstances at the time of the removal and not those that might be discovered later. However, post-removal facts may be admissible at the statutory hearing if they are relevant to the best interests of the child. A child's best interests is the overriding concern. Therefore, a trial court has authority to return the child to the home of the objecting foster parent based on all of the circumstances, even where an emergency removal was not arbitrary at the time it was performed. In this case, the trial court's decision not to return the child was based on the erroneous conclusion that the foster parent's motion was filed too late. The order is reversed and the case is remanded for a determination of whether O.R.'s removal from Winfrey's home was in his best interests.


JOPLIN, P.J., and BUETTNER, J., concur.



FOOTNOTES


[1] When an appellate court must interpret a statute it does so without any deference to the trial court. In re T.H., 2015 OK 26, ¶4, 348 P.3d 1089, 1091. We do not reverse decisions concerning the placement of children unless the juvenile court abused its discretion. In re BTW, 2010 OK 69, ¶16, 241 P.3d 199, 206, as revised (Oct. 14, 2010).



[2] Title 10A O.S. §1-7-103(B)(1).



[3] Title 10A O.S. §1-4-805(C)(4) provides: "The court shall conduct an informal placement review hearing within fifteen (15) judicial days on any objection filed by a party, foster parent or group home pursuant to this section. The court may order that the child remain in or be returned to the home of the objecting foster parent or group home if the court finds that the placement decision of the Department or child-placing agency was arbitrary, inconsistent with the child's permanency plan or not in the best interests of the child."









 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2010 OK 69, 241 P.3d 199, IN THE MATTER OF BTW
Discussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed
 2015 OK 26, 348 P.3d 1089, IN THE MATTER OF T.H.
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA